Court will now call case number 523-0634, People v. Wilkerson. Counsel for the appellant, Mr. Dunham, you may proceed. May it please the court, counsel. My name is Gerald Dunham. I represent Curtis Wilkerson. I should say I'm here pro bono and got to know Curtis and I believe him. I want to just start very briefly with the Batson issue because I think if I can convince you with regard to Batson, I will speak louder. I think I've gone a long way toward prevailing for my client. My client was, I represented him in the trial court. I did not represent him on appeal. Shortly after the verdict came in, I had to recuse myself and other counsel took over. The Batson issue was raised on post-conviction or post-new trial motions, but it was not raised in the appellate court. Now, there's, as the court well knows, there's three stages to a Batson challenge. One, there's a first stage that the defendant has to raise a prima facie case. And I'd like, there seems to be some spirit of disagreement between the parties as to whether the trial court really understood and appropriately applied Batson. We take the position and I think there's ample authority to back that up. You do not have to necessarily show a pattern in order to insist, to go, to make your challenge and insist at the second stage that the prosecution articulate race neutral reasons for a preemptory challenge. At page A30 of the record, where it was at the post-trial motion, the trial judge made it very clear, made a flat-out statement that you do not get to make a Batson challenge with regard to the first preemptory challenge. In other words, you have to show a pattern. That's what the trial judge said. And that's just flat-out error. And the reason I think that's important is because I think the trial judge was confused as to what Batson requires throughout the entire proceeding. Now, with regard to Juror Terry, I, again, raised a Batson objection to exercising the preemptory challenge. And the trial judge at that point asked the prosecution to articulate a race neutral reason. He said, well, there had been an investigation and we believe that when Juror Terry said he didn't know anybody, any of the witnesses, we believe that one of the witnesses, a Samantha Dean, that Juror Terry knew that person. And so on my request, the Juror Terry was worded, questioned by the judge, and she basically said she did not know Dean. Then the question was, well, there was another family, the Box family, Stephanie Box. Maybe you, what do you know about her? And her response was, I've heard the name, but I don't know the family. Trial judge then asked a leading question to prosecution. He said, well, are you also making your preemptory challenge with regard to the Box family? That's paraphrasing, but that's essentially what the trial judge was asking. Now, at that point, the defendant, Wilkerson, we contend that that was not a sufficient race neutral reason for the prosecution to exercise a preemptory challenge. And here's why. If this were in a larger county, perhaps it might have been sufficient. But we're talking about Cairo. We're talking about a very rural area, small population area, which is with a heavy black population in the city of Cairo, and then a heavily white population in the surrounding areas. Tams, McClure, other areas like that. And as a practical matter, where you have a black defendant, everybody in Cairo is going to know the name of everybody else. And as a practical matter, if you're going to say that a black potential juror knows the name of the defendant, knows the name of some of the witnesses, but doesn't know them as individuals, couldn't pick them up out of a lineup, what you're practically doing is you're allowing the prosecution to exercise a preemptory challenge against every black potential juror in the city of Cairo. Because they all know one another because the community is so small. And under the People vs. Love Day case cited in our brief, that is one of the factors in terms of the disproportionate impact on the rights of the defendant in terms of the diverse jury that should be taken into consideration as to whether that's a race neutral reason. Because the prosecution in Cairo can use that as an argument to get rid of every potential black juror that's ever going to sit on the jury there. Well, but then I think there's also a spirited disagreement between us and the prosecution with regard to the third stage. They say, as I understand their brief, that the trial judge gave Wilkerson his third stage hearing by calling Ms. Dean into the room and asking her questions. I say that's nonsense. And here's why. The reason that the prosecution said, we're exercising preemptory challenges because we have reason to believe that she knows Samantha Dean. And then during the voir dire, it comes out she's heard the name of Stephanie Box. She's heard the name of the Box family. And the trial judge asks a leading question to the prosecution, well, are you incorporating the Box family into your challenge, your preemptory challenge? And the prosecution says, yes. Trial judge then at that point says, I find that there's been a race neutral reason and the preemptory challenge will stand. Now, that did not give Wilkerson the opportunity to contest whether the incorporation of the Box family into the challenge did not give the defense the opportunity to offer rebuttal, offer reasons in saying this is a pretext. And Wilkerson's constitutional rights were violated as a matter of law at that point. This court in which the court that I had an opinion that I think you're all very familiar with said that the third prong, the rebuttal prong is essential and it cannot be waived. And at that point, Wilkerson was deprived of his constitutional rights. What have white jurors known? Well, did you investigate any white jurors? Who did the investigation? What did the investigation reveal? Did any of the white jurors know any of the witnesses? None of this information was presented to the trial judge and so we never find out whether or not this was, we can show a rebuttal as to a pretext. I'm very disturbed about this because if we allow the prosecution to simply say we've done an investigation and that stands, we don't know who did the investigation, we don't know how thorough it was, we don't know what the investigator found out. We don't know why is it that the prosecution didn't ask any questions of Cherry on when the jury was being boarded up. I suspect, I think we should have had the opportunity to ask that question because if the prosecution was just going to sit there and say I've got an investigation, we don't know who it was, who did it. And I'm going to use this to exercise a preemptory challenge without asking Cherry, what is it? Do you know this person? Do you know this person? Did not do that. Just laid in the weeds because no one was going to use a preemptory challenge. I see my red light is on. Thank you. You'll have an opportunity for a rebuttal. Any questions from the judges? No questions. Thank you. Counsel for State. Thank you, Your Honor. May it please the Court? Counsel. Jennifer Camden on behalf of the people. I'd like to first address the issue of waiver as to the Batson issues. Claims not clearly set forth in the defendant's amended petition are waived and cannot be considered in this appeal from the dismissal of the petition under the plain language of the Post-Conviction Hearing Act and the Jones cases cited in the people's answer brief. So here, that waiver rule applies to any claim related to prospective juror Crittenden, claims that the trial court collapsed the Batson inquiry, claims that the trial court should not have accepted the State's reasons for striking prospective juror Terry, and ineffective assistance of appellate counsel based on those claims. And notably, in his reply brief, the defendant is not contending that any of those claims actually were raised in his amended petition. Instead, at page 6 of the reply at footnote 1, he contests the principle set forth in Jones that claims must be specifically set forth in the petition and in support, and he cites a case called Wiley. But the Wiley case involved a direct appeal, not a post-conviction petition. And in that case, the Illinois Supreme Court held that a Batson claim had been properly preserved for direct appeal via a contemporaneous objection and a post-trial motion and that the record was sufficient to review that issue. It said nothing about the defendant's burden to clearly set forth post-conviction claims in a petition. Therefore, again, those unraised claims not clearly set forth in the petition are waived, and under Jones, they can't be considered here. On the issue of rebuttal, the defendant is arguing that the State's position is that the voir dire of Terry was at the third stage of Batson. My understanding is that it was at the second stage. That's when the defendant may try to rebut the State's proffered race-neutral reason in a Batson proceeding. Now, the defendant is claiming that the trial court did not allow him to attempt to rebut the State's reason. First, that claim is waived because it wasn't raised in the petition. But also the claim is meriless because, in this case, after the State gave its reason for striking Terry, defense counsel requested additional voir dire of Terry in order to challenge the factual basis for the State's reason. And the trial court allowed it. And additional voir dire is an accepted method for defense counsel to attempt to rebut the State's proffered reason as a pretext. So here, defense counsel was allowed to try to rebut the State's proffered reason by having Terry questioned about it. So, therefore, the defendant was not barred for a chance at rebuttal. I think the confusion here is that it's true that commonly a defendant does attempt to rebut the State's reason for its strike by arguing disparate treatment, that the State didn't strike others who, based on their similar answers during voir dire, were not similarly challenged, like the challenge sure was. But that's not what happened here. There was no indication that other jurors had undisclosed associations. So defense counsel didn't attempt to rebut the State's reason by trying to show disparate treatment. Defendant now complains that he was deprived of a chance to show an alleged double standard and requests remand to, quote, present his case rebutting the State's reason. That's from the reply brief at pages 5 and 7. But the trial court in this case never barred the defense from trying to show disparate treatment or trying to rebut the State in any other way. Defense counsel never said he had any further case to present. The court conducted voir dire of Terry at defendant's request, asked Terry a particular question at defense counsel's request, invited counsel to suggest further questions for Terry, and then after Terry was excused, defense counsel was silent when the court asked anything further. The defense also suggests that the trial court should have allowed the defense to question the State directly. But that claims the matter was because defense counsel never asked to do so. So the trial court can't have wrongly denied leave to do something that counsel never asked for. Now, the defendant also argues that the trial court asked leave in questions. That claim was in the ‑‑ during the Batson proceeding. That claim was in the amended petition, but it's meritless because, first, defense counsel didn't object to the court's question at the time. Second, Stephanie Box was Dean's mother. Therefore, the State's initial articulation of its reason for the strike, which was that Terry had associations with the Dean family, that articulation encompassed the Box family because it was one family. Also, it was defense counsel who specifically asked the trial court to ask Terry whether she knew Stephanie Box. The trial court then did so. Therefore, when the State rephrased its race-neutral reason as having been informed that Terry had connections to both the Dean family or the Box family, the State was only repeating what the trial court had already heard at the suggestion of defense counsel. And then finally, the defendant is arguing that striking a person for knowing a name is unfair. But that's not what the court did here. The court's acceptance of the State's race-neutral reason was not clearly erroneous because it came out at the additional warning of Terry that it was undisputed that Terry recognized names on the witness list and failed to disclose that. The record shows that she remained silent during voir dire of the entire panel when asked at least six times whether she knew or recognized any name on the witness list. But then during her separate additional voir dire, she revealed that she did, in fact, know and recognize the names of three people on that list. The State's concerns regarding a juror's acquaintance with potential witnesses are legitimate race-neutral reasons for a challenge. The trial court understood that that was the basis of the State's challenge, and it accepted that reason for the strike. And this was not clear error, which is the standard here, because the record doesn't clearly show intentional discrimination. In addition to that, the State's answer brief discusses some other supporting circumstances, supporting the trial court's implicit finding that there was no intentional discrimination here, such as that the jury contained two African-American jurors, one seated before the State struck Terry and one was seated afterwards. Also, the victim in this case, many of the witnesses in this case were African-American. Also, although Crittenden was the first black juror struck by the State, the court accepted the State's reasons for that as race-neutral, and the defendant is not now challenging that strike in his amended petition. In my remaining time, I'd like to briefly address the issue of timeliness. This Court may affirm the dismissal of the petition on the grounds that the petition was untimely, even though the trial court ruled that there was a lack of culpable negligence. And if this Court does that, it need not go on to address the Batson issues. Now, in the defendant's reply brief, he claims that the State's argument regarding culpable negligence is forfeited because the State didn't specifically challenge the sufficiency of his factual allegations regarding culpable negligence in the trial court. But the State's motion to dismiss argued that the only fact alleged to establish his freedom from culpable negligence prior to August 3, 2021, was that he was totally unaware of his rights. That is an argument about the sufficiency of his factual allegations regarding culpable negligence, so the State didn't forfeit any such argument. And in any event, this Court may affirm for any reason apparent from the record, and the legal insufficiency of those factual allegations about untimeliness is apparent from the record. Although it's true that an allegation regarding a prison lockdown can be sufficient to excuse untimeliness, in this case, the defendant's allegations were insufficient because he didn't specify when the alleged lockdown occurred or its duration, or most notably, whether it was in effect during the applicable filing period that ended in July 2021. The only date specified when any lockdown was in effect was one day in December 2020. So for the reasons I've stated today and the reasons in the People's Answer Brief, the State respectfully requests that this Court affirm. Any questions for the judge? No questions. Thank you, counsel. Great job. Thank you, Your Honor. In the amended petition, page A106, the allegation is made, the trial court erred by not permitting the defense to question the prosecution to test the validity of the challenge and make a determination as to whether the challenge was a pretext. That's what was alleged in the amended petition. The argument that we were not permitted a third-stage hearing was not waived. Now, I think I heard the prosecution say that the voir dire of Terry was part of the second stage, in which case, then, there never could have been a third-stage hearing. And under this Court's opinion in Wicks and following the Trejo case and other cases, the defendant is entitled to submit rebuttal evidence, and that cannot be waived. That's an essential part of the process. You just don't get to have the prosecution state a reason, and then the trial judge says, well, I think that's race-neutral. You've got to give the defendant the opportunity to rebut that. And with regard to the argument that was raised the first time was, during while Terry was in the room, the suggestion was made that Terry knew Dean. And the response was, I've heard of the Box family. That was it. There was never any opportunity for Wilkerson to rebut that statement as a pretext. And so we get back to the situation, which I'm concerned about, which is the prosecution lays in the weeds, doesn't ask any questions on board there of the jury, doesn't reveal what the nature of the investigation was, doesn't reveal who was investigated, doesn't reveal that there may have been other people on the jury that did not raise their hand. Do you know any of the witnesses? Have you heard of any of the witnesses? That lets those slide because they are right. And so they don't want to raise a challenge. Now, if that's the facts of the case, and I'm afraid they are, then that's a pretext. Now, the argument was made, well, perhaps I should have said, Your Honor, I would like to pursue rebuttal evidence further. But the trial judge ruled. The trial judge didn't ask, Mr. Dunham, under the third stage, you get to provide rebuttal evidence. What rebuttal evidence would you like? That's the constitutional requirement. But the trial judge just flat out ruled. And that puts the defendant in a very untenable situation, and here's why. Because he does get convicted. It's the same trial judge that's going to do the sentence. And you've got to be very careful about challenging the trial judge after he's ruled, because in my experience, I've never had the opportunity to be a judge, but in my experience, once the judge has ruled, it's very, very rare the judge ever changes his position. And that's where the error was made. It's not the trial judge has a constitutional duty to follow Batson. With regard to the culpable negligence issue, the standard review there is against manifest grade of the evidence. But the trial judge here in finding there was no culpable negligence, and so therefore the petition was timely, should be reviewed on that basis. And we stand on our brief. Thank you, Your Honor. Thank you, Counsel. The court will take this matter under advisement and issue its decision in due course. There is one other case on our docket this morning, number 524-0738, manual versus sides. The respondent's presence at that hearing was excused by an order entered this morning. Therefore, this court will take that matter under advisement and issue its decision based upon the writings and objections submitted by the respondent. And the court will then stand in recess until tomorrow.